UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:  Nancy Jean Burbridge,                                    Case No. 15-10839
                                                                 Chapter 13

                              Debtor.

APPEARANCES:

McNamee, Lochner, Titus & Williams, PC                Kevin Laurilliard, Esq.
*Attorneys for Nancy Burbridge*
P.O. Box 459
677 Broadway
Albany, NY 12201

McElroy, Deutsch, Mulvaney & Carpenter, LLP           Kevin S. Brotspies, Esq.
*Attorneys for Endurance American Insurance Company*
88 Pine Street, 24th Floor
New York, NY

Nolan & Heller, LLP                                   Francis J. Brennan, Esq.
*Attorneys for Laurie A. Todd*
39 North Pearl Street
Albany, NY 12207

William K. Harrington                                 Lisa M. Penpraze, Esq.
*United States Trustee for Region 2*
Office of the United States Trustee
74 Chapel Street, Suite 200
Albany, NY 12207

Andrea E. Celli, Esq.                                 Andrea E. Celli, Esq.
*Chapter 13 Standing Trustee*
7 Southwoods Boulevard
Albany, NY 12211

Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM–DECISION AND ORDER

Currently before the Court is Endurance American Insurance Company's ("Endurance")

Motion to Reconsider and/or Vacate the Dismissal Order, Convert to Chapter 7, and to hold the

Debtor in Contempt (the "Motion").  The Court has jurisdiction over this proceeding pursuant to

28 U.S.C. § 157(a), (b)(1), and (b)(2).

## PROCEDURAL HISTORY AND FACTS

The Debtor filed a voluntary chapter 13 petition on April 21, 2015, and the Debtor's

Schedule C claims an inherited Individual Retirement Account ("inherited IRA") in the

approximate value of $800,000 as exempt pursuant to New York Civil Practice Law and Rules

§ 5205(c).  After considerable litigation regarding the Debtor's exemption, including two attempts

at mediation with Chief Bankruptcy Judge Margaret Cangilos-Ruiz, Endurance filed a motion

seeking, among other relief, to preserve the Debtor's inherited IRA.  (ECF No. 152.)  The Court

entered an Interim Order resolving the inherited IRA portion of that motion on February 2, 2018.

(ECF No. 163.)  The Interim Order permitted the Debtor only to receive her required minimum

distribution ("RMD") from the inherited IRA and directed the Debtor to provide Endurance with

specific documentation regarding the inherited IRA. Further, the Court expressly retained

jurisdiction "regarding the interpretation, implementation and enforcement" of the Interim Order

and "to hear and determine any matters or disputes arising from or related to this Order."  On

March 19, 2018, the Debtor filed a Notice of Voluntary Dismissal, which the Court 'So Ordered'

the same day.  (ECF Nos. 166, 167.)

Endurance filed this Motion on April 2, 2018, and, after learning new facts through the

state court process, filed a declaration in further support of its Motion on April 12, 2018.

Endurance's supplemental declaration includes Charles Schwab's response to an information

subpoena that indicates the Debtor depleted the entirety of her inherited IRA nearly two years prior

to dismissal of her case.  Based on the additional submission, the Court advanced the scheduled

hearing on the Motion and issued a *Sua Sponte* Order to Show Cause for Contempt.  Over the

2

course of evidentiary hearings held on April 16, 2018 and April 17, 2018, the Debtor confirmed

that she transferred the entirety of her Charles Schwab inherited IRA to a Fidelity Investments

inherited IRA on or about April 2016.  (Trial Tr. 20:11-12, 27:3-4, April 16, 2018; Trial Tr. 28:11-

17, April 17, 2018.)  By that time, the Debtor indicated she had also depleted two Charles Schwab

investment accounts worth approximately $200,000.  (Trial Tr. 32:20-33:4, April 16, 2018; Trial

Tr. 29:14-30:7, April 17, 2018.)  All of the Debtor's actions relating to the three Charles Schwab

accounts were taken without Court approval.

After the Debtor transferred the inherited IRA, she continued to withdraw funds from her

Fidelity account for the remainder of her case.  According to a Fidelity account statement for

February 2018, the Debtor's inherited IRA had a balance of $630,659.18 on February 1, 2018, and

she withdrew $6,000 that month.[1]  (Debtor's Ex. 3.)  The Debtor testified that she withdrew all of

the remaining funds within the Fidelity account after her dismissal and transferred $300,000 to her

son, Matthew, and $25,000 to her other son, David.  (Trial Tr. 31:1-5, 62:4-8, April 17, 2018.)  At

the time of the second evidentiary hearing, she estimated that she still had between $200,000 and

$210,000 in her possession – $170,000 in a bank account and $30,000 to $40,000 in cash.  (Trial

Tr. 14:7-11, 18:22-19:2, April 17, 2018.)  The Court has not heard testimony or received evidence

that accounts for the remaining funds withdrawn from the Fidelity inherited IRA.  When asked

about her intent, the Debtor testified that part of the reason why she withdrew the funds from her

inherited IRA was to put the money beyond the reach of Endurance and her other creditors.  (Trial

Tr. 51:6-13, 52:12-17, April 17, 2018.)  After completion of the two evidentiary hearings, the

---

[1] Pursuant to paragraphs one (1) and six (6) of the Interim Order, the Debtor was permitted only to withdraw her RMD in accordance with Internal Revenue Service requirements.  While it is not clear exactly what the Debtor's RMD was for 2018, the Court estimates that her RMD on a monthly basis was approximately $3,000.  The Court's estimate is based on the Debtor's 1099-R forms for the years 2014 and 2016, which show gross distributions from her inherited IRA of $33,411.82 and $36,402.34, respectively.  Based on this monthly estimate, the Debtor withdrew approximately $3,000 more than permitted in February 2018.

United States Trustee, Laurie Todd,[2] and the Chapter 13 Trustee all filed submissions in support of the Motion, and the Debtor filed opposition.

The Court directed the Debtor to produce account statements for her inherited IRA in advance of the adjourned hearing on April 26, 2018.  Prior to the hearing, the Debtor produced yearly statements for 2015, 2016, and 2017, but the Debtor did not produce a monthly statement for March 2018.  At the hearing on April 26, 2018, the Debtor submitted the March 2018 statement and it contradicts the Debtor's testimony that she closed her Fidelity inherited IRA after her case was dismissed.  Instead, the statement establishes that the Debtor withdrew $17,000 on March 9, 2018, and withdrew $600,296.44 on March 15, 2018.[3]  Based on the March 2018 statement, the Debtor's violation of the Interim Order is far worse than anticipated after the evidentiary hearings.

## STANDARD

Reconsideration pursuant to Federal Rule of Civil Procedure 59(e), made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9023, is warranted "when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed."  *Bace v. Babitt (In re Bace)*, 2012 U.S. Dist. LEXIS 92441 at *35 (S.D.N.Y. May 10, 2012) (quoting *Key Mech. Inc. v. BDC 56 LLC*, 2002 U.S. Dist. LEXIS 5005 at *2–3 (S.D.N.Y. Mar. 26, 2002)).  The moving party "must show that the court overlooked factual matters or controlling precedent that might have materially influenced its earlier decision."  *Bace*, 2012 U.S. Dist. LEXIS 92441 at *35.[4]

---

[2] Laurie Todd ("Todd") is the Debtor's sister and has her own bankruptcy case, No. 15-11083, pending before the Court.  On March 23, 2018, the Court entered a Memorandum-Decision and Order holding that Todd's inherited IRA is not exempt.

[3] Even if the Debtor were to argue that the Interim Order permitted her to withdraw her total annual RMD at once, and not on a monthly basis, the Debtor does not dispute that she violated the Interim Order by withdrawing the entirety of her Fidelity account prior to dismissal of her case.

[4] Endurance also cites generally to the entirety of Federal Rule of Civil Procedure 60(b), made applicable to this proceeding pursuant to Federal Rule of Bankruptcy Procedure 9024, as a basis to vacate the dismissal order.

**ARGUMENTS**

Endurance argues that the Court should reconsider and/or vacate the dismissal order as the Court was not aware that the Debtor dissipated more than $1,000,000 of estate assets during her case without Court approval, of which more than $600,000 was in direct violation of the Interim Order limiting the Debtor's access to her inherited IRA.  Additionally, Endurance, with the support of the other parties, asserts that it should have had an opportunity to respond to the Debtor's request for voluntary dismissal because the Supreme Court's decision in *Marrama v. Citizens Bank,* 549 U.S. 365 (2007), abrogated Second Circuit precedent such that the right to voluntarily dismiss a case is no longer absolute.   In response, the Debtor disputes Endurance's interpretation of *Marrama* and argues that *Marrama* did not affect the Debtor's absolute right to dismiss a chapter 13 case.

**DISCUSSION**

I.    <u>11 U.S.C. § 1307(b)</u>

Pursuant to 11 U.S.C. § 1307(b), "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter."  In 1999, when presented with two competing motions, a trustee's motion to convert and a debtor's motion to dismiss, the Second Circuit held in *Barbieri v. RAJ Acquisition Corp.* (*In re Barbieri),* 199 F.3d 616 (2d Cir. 1999), that the Debtor's right to voluntarily dismiss a chapter 13 case under 11 U.S.C. § 1307(b) is absolute.  Until *Barbieri* is overruled or abrogated, lower courts within this Circuit are bound by that decision.  *See Procel v. United States Trustee (In re Procel)*, 467 B.R. 297, 305 (S.D.N.Y. 2012).  Therefore, the threshold issue before the Court is not whether *Barbieri*'s holding is correct but rather, to what extent, if any, did *Marrama* overrule or abrogate

*Barbieri*.  If *Barbieri* has not been overruled or abrogated, the right to voluntarily dismiss remains

absolute and the Court must deny the Motion.

II.    *Marrama v. Citizens Bank*, 549 U.S. 365 (2007)

In *Marrama*, a chapter 7 debtor misrepresented the value of certain real estate and

concealed that he transferred it during the year preceding his bankruptcy filing.  *Marrama,* 549

U.S. at 368.  Once the Chapter 7 Trustee discovered the transfer and indicated his intention to

recover the property as an avoidable transfer, the debtor attempted to convert to chapter 13

pursuant to 11 U.S.C. § 706(a).  *Id.* at 368–69.  This provision states that "[t]he debtor may convert

a case under this chapter . . . to a case under chapter 13 of this title at any time . . . ."

Notwithstanding the seemingly absolute language within that provision, as well as the legislative

history referring to conversion under § 706(a) as an absolute right, the Supreme Court determined

that a debtor's right to convert is not absolute.  *Id.* at 371.

To reach this conclusion, the Supreme Court considered the interplay between §§ 706(a),

706(d), and 1307(c).  *See id.* at 371–73.  First, the Court noted that a chapter 7 debtor's right to

convert in § 706(a) is expressly limited by § 706(d), which prohibits conversion to "another chapter

of this title unless the debtor may be a debtor under such chapter."  *Id.* at 371–72.  Second, based

on this limitation, the Court looked to § 1307(c), pursuant to which a chapter 13 case may be

converted to chapter 7 on a number of grounds, including bad faith.  *Id.* at 372–74.  Taking § 706(d)

and § 1307(c) together, the Supreme Court reasoned that a chapter 7 debtor who proceeds in bad

faith cannot "be a debtor" under chapter 13 because a case may be converted back from chapter

13 to chapter 7 for bad faith pursuant to § 1307(c).  *Id.* at 374–75.  For these reasons, the Supreme

Court held that the § 706(a) right to convert is subject to a bad faith exception.  *Id.*

III.    _Marrama_ did not overrule or abrogate _Barbieri_

In the present matter, none of the parties argue that _Marrama_ overruled _Barbieri_.  Instead,

Endurance, and the supporting parties, primarily rely on _In re Armstrong,_ 408 B.R. 559 (Bankr.

E.D.N.Y. 2009), to argue that _Marrama_ abrogated _Barbieri_ such that the right to dismiss a chapter

13 case is absolute only if the debtor has not proceeded in bad faith.[5]  _Armstrong_ concluded, in

relevant part, that _Marrama_ abrogated _Barbieri_ by: (1) expanding § 105(a) beyond _Barbieri's_

limited view; (2) holding that the anti-waiver provision in § 706(a) does not prevent a debtor from

forfeiting the right through bad faith conduct; and (3) concluding that the right to convert is not

absolute notwithstanding the § 706(a) stating that the debtor may convert "at any time."  _See_

_Armstrong,_ 408 B.R. at 570–72.  For the following reasons, this Court respectfully disagrees with

_Armstrong's_ analysis.

First, _Armstrong_ states that _Marrama_ "took a much more expansive view of section 105(a)

and recognized that bankruptcy courts' need to exercise their inherent authority and their authority

under § 105(a) to prevent abuse of the bankruptcy process."  _Id._ at 570.  _Armstrong_ reasoned that

_Barbieri's_ refusal to rely on § 105(a) to deny the debtor's request for voluntary dismissal is now

incorrect based on _Marrama's_ broader interpretation of § 105(a).  _Id._  However, _Marrama's_

analysis of § 105(a) is not nearly as broad as _Armstrong_ suggests.  Confined only to one sentence,

_Marrama_ states that a bankruptcy judge's broad authority "is surely adequate to authorize an

immediate denial of a motion to convert filed under section 706 in lieu of a conversion order that

---

[5] Endurance and the supporting parties also rely on cases from other circuits decided after _Marrama,_ which hold that
the right to dismiss under § 1307(b) is not absolute.  _See, e.g., In re Jacobsen,_ 609 F.3d 647 (5th Cir. 2010); _In re
Rosson_, 545 F.3d 764 (9th Cir. 2008); _In re Mitrano_, 472 B.R. 706 (E.D. Va. 2012); _In re Pustejovsky_, 577 B.R. 671
(Bankr. W.D. Tex. 2017); _In re Brown_, 547 B.R. 846 (Bankr. S.D. Ca. 2016); _In re Cyncynatus_, No. 12-10111, 2013
Bankr. LEXIS 2998 (Bankr. N.D. Ohio July 24, 2013); _In re Kotche_, 457 B.R. 434 (Bankr. D. Md. 2011); _In re
Caola_, 422 B.R. 13 (Bankr. D.N.J. 2010); _In re Chabot_, 411 B.R. 685 (Bankr. D. Mont. 2009); _In re Letterese_, 397
B.R. 507 (Bankr. S.D. Fla. 2008).

merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Marrama*, 549 U.S. at 375.

This analysis is limited to a § 706(a) conversion and is predicated on the express limitation contained in § 706(d), which, in the eyes of the Supreme Court, rendered conversion to chapter 13 an exercise in futility because the case could have been immediately converted back to chapter 7 for bad faith. *See id.* at 368, 375 ("We granted certiorari to decide whether the Code mandates that procedural anomaly."). In contrast, the Bankruptcy Code's only limitation on the right to dismiss a chapter 13 case, contained within § 1307(b) itself, is that "the case has not been converted." In this regard, there is no other code provision equivalent to § 706(d) that makes dismissal a pointless endeavor. *See Procel*, 467 B.R. at 306. Without an equivalent provision, the Court does not read *Marrama* to abrogate *Barbieri's* conclusion that § 105(a) "does not authorize the Court to disregard the plain language of 1307(b)." *Barbieri*, 199 F.3d at 621.

Second, *Armstrong* mistakenly placed emphasis on the fact that § 1307(b) contains non-waiver language that is identical to the language within § 706(a), which *Marrama* concluded does not prevent a debtor from forfeiting the right to convert by proceeding in bad faith. *Armstrong,* 408 B.R. at 571. By analogy, *Armstrong* argued that forfeiture of the right to dismiss under § 1307(b) for bad faith should be recognized since the non-waiver language is the same in both provisions. *See id.* However, the Court does not find this argument relevant because *Barbieri* did not rely on § 1307(b)'s non-waiver language to hold that the right to voluntarily dismiss is absolute.

Third, *Armstrong* reasoned that *Marrama* abrogated *Barbieri's* analysis of § 1307(b)'s plain language since the Supreme Court held that the right to convert under § 706(a) is not absolute despite also containing the phrase "at any time." *Armstrong*, 408 B.R. at 572. However, this conclusion fails to recognize that § 1307(b) also contains the directive "shall" and that *Barbieri*

8

relied on that, together with the phrase "at any time," to conclude that § 1307(b) is mandatory. *Barbieri*, 199 F.3d at 619. Taking into consideration the mandatory nature of the word "shall" and its absence from § 706(a), this Court cannot find that *Marrama* has any impact on the Second Circuit's § 1307(b) plain language analysis.

Additionally, while not based on *Marrama*, *Armstrong* claimed that *Barbieri's* plain language analysis has also been called into question through the enactment of 11 U.S.C. § 1307(e), which states that the court "shall dismiss a case or convert a case under this chapter to a case under chapter 7 of this title . . ." if the debtor fails to file a tax return. Based on the mandatory language in § 1307(e), *Armstrong* argued that the right to dismiss may no longer be absolute as a court may be required to convert a case when presented with competing § 1307(b) and § 1307(e) motions. *See Armstrong*, 408 B.R. at 572. While it is uncertain what would happen in that hypothetical scenario, it is clear that § 1307(e)'s enactment does not "affect the interaction between § 1307(b) and § 1307(c) as described in *Barbieri*." *Procel*, 467 B.R. at 307.

To summarize, the Court cannot conclude, by analogy, that *Marrama* abrogated *Barbieri* when the statutes are not analogous. The linchpin of the *Marrama* decision was § 706(d)'s limitation on the right to convert, and, without an equivalent provision limiting the right to dismiss pursuant to § 1307(b), this Court simply cannot hold that *Marrama's* analysis has any impact on *Barbieri*. *See Marrama*, 549 U.S. at 374 ("The text of § 706(d) therefore provides adequate authority for the denial of [the debtor's] motion to convert."). For all of the foregoing reasons, *Barbieri* is still good law and continues to bind the Court.

Beyond *Barbieri*, the parties argue, in equity, that the Debtor simply cannot be allowed to abuse the bankruptcy process and escape the Court's jurisdiction without consequence. The Court agrees that the Debtor's conduct during the pendency of her case seeps bad faith and believes that

this case could serve as the posterchild for a bad faith exception to a debtor's right to dismiss a case. After nearly twenty-three years on the bench, this Court cannot recall another case involving more egregious post-petition conduct than the Debtor's conduct in this case. But for *Barbieri*, this Court would find *In re Rosson*, 545 F.3d 764 (9th Cir. 2008), and other similar cases, to be persuasive and would conclude that a bad faith exception to § 1307(b) exists to allow bankruptcy judges to prevent bad faith chapter 13 debtors from abusing the bankruptcy system. While an unwilling debtor cannot be forced to stay in chapter 13, that does not necessarily mean that a bad faith actor should be allowed to totally exit this Court's jurisdiction with ill-gotten gains. In such an instance, a conversion would be more appropriate. However, *Barbieri* is an impenetrable roadblock that prevents the Court from finding such an exception.

IV.    <u>Reconsidering and/or vacating the dismissal order is not warranted</u>

Reluctantly, the Court has no choice but to deny the Motion to reconsider and/or vacate the dismissal order pursuant to Federal Rules of Civil Procedure 59(e) and/or 60(b). Under either provision, Endurance's argument is that the Court should have allowed Endurance the ability to respond to the Debtor's request for voluntary dismissal. However, such a response would be futile since *Barbieri* still controls. The Debtor's nefarious conduct cannot serve as the basis for reconsideration of the dismissal order under either Rule 59(e) or 60(b). Unless and until Congress amends § 1307(b) or *Barbieri* is reconsidered by the Second Circuit or overruled by the Supreme Court, this Court's hands are tied.

**CONCLUSION**

For all of the foregoing reasons, the portion of Endurance's Motion requesting that the Court reconsider dismissal and convert the Debtor's case to chapter 7 is DENIED. The balance of

the Motion seeking to hold the Debtor in contempt may proceed together with the Court's

adjourned *Sua Sponte* Order to Show Cause for Contempt.

It is SO ORDERED.

Dated: May 3, 2018                                   /s/ Robert E. Littlefield, Jr.
       Albany, New York                          Robert E. Littlefield, Jr.
                                                    United States Bankruptcy Judge